Case 4:15-cv-00054 Document 81 Filed in TXSD on 01/28/16 Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
January 28, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE THE COMPLAINT AND § | |
| PETITION OF RLB CONTRACTING, § | |
| INC., as Owner of the JONATHAN § | |
| KING BOYD, ITS ENGINES, GEAR, § | CIVIL ACTION NO. H-15-54 |
| TACKLE, ETC. in a Cause for § | |
| Exoneration from or Limitation § | |
| of Liability § | |

MEMORANDUM AND ORDER

Pending is Claimants Alfredo Elizondo, Juan Montoya, and Mario Garza's Opposed Motion to Lift Stay (Document No. 30). After carefully considering the motion, response, reply, sur-reply, supplemental briefing, and the applicable law, the Court concludes as follows.

I. Background

Plaintiff RLB Contracting, Inc. ("RLB") filed this action to seek exoneration from or a limitation of its liability to Claimants Alfredo Elizondo ("Elizondo"), Mario Garza ("Garza"), and Juan Montoya ("Montoya") (collectively, "Claimants"), each of whom has an individual personal injury action for damages pending against Petitioner RLB in three separate state court cases. Each of the three claimants alleges that he was injured while performing his duties aboard Petitioner's vessel, the Dredge *Jonathan King Boyd* (the "Dredge"), and each injury is alleged to have occurred on

separate days and under separate circumstances. Claimants' pending state court cases and claims are summarized as follows:

|   | Claimant | Date(s) of Injury | Pending State Court Case | Damages Claimed |
|---|---|---|---|---|
| 1 | Mario Garza | 5/6/14 and 5/24/14 | 267th Judicial District Court Calhoun County | $2,500,000 |
| 2 | Alfredo Elizondo | 6/1/14 | 24th Judicial District Court Refugio County | $2,500,000 |
| 3 | Juan Montoya | 6/17/14 | 135th Judicial District Court Refugio County | $2,500,000 |

Claimants' aggregate damages claimed: $7,500,000

RLB timely filed a verified *Ad Interim* stipulation for value representing that its interest in the Dredge and her pending freight, if any, at the termination of the voyage (April 19, 2014–June 29, 2014, while dredging San Antonio Bay, Texas) was $1,600,400, and RLB filed a Letter of Undertaking for such sum, plus interest, in accordance with law.

Claimants filed their claims in this case,[1] and subsequently moved to lift the stay, arguing that their stipulations are

---

[1] Document Nos. 17, 18, 19.

sufficient to protect RLB's rights under the Limitation of Liability Act. RLB opposes the motion.[2]

## II. Legal Standard

The Limitation of Liability Act (the "Act" or the "Limitation Act"), "provides that the liability of a shipowner for any damage arising from a maritime casualty which is occasioned without the privity or knowledge of the shipowner shall not exceed the value of the vessel at fault together with her pending freight." Magnolia Marine Transp. Co. v. Laplace Towing Corp., 964 F.2d 1571, 1575 (5th Cir. 1992); see also 46 U.S.C. § 30505 ("Except as provided in section 30506 of this title, the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight."). "Federal courts have exclusive jurisdiction over suits invoking the Act . . . ." Texaco, Inc. v. Williams, 47 F.3d 765, 767 (5th Cir. 1995) (internal quotation marks and citation omitted).

The savings to suitors clause in 28 U.S.C. § 1333 provides that federal district courts have original jurisdiction, exclusive of state courts, over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." The savings to suitors clause essentially provides claimants with the right to choose the forum

---

[2] Document No. 48.

in which they will bring their suit. Thus, "[s]ome tension exists between the saving to suitors clause and the Limitation Act. One statute gives suitors the right to a choice of remedies, and the other statute gives vessel owners the right to seek limitation of liability in federal court." Lewis v. Lewis & Clark Marine, Inc., 121 S. Ct. 993, 1001 (2001).

There are two instances in which claimants clearly may proceed with their actions in state court, provided the shipowner's right to limit liability is protected. See Lewis, 121 S. Ct. at 1001-1002. The first is when there are multiple claimants but their claims in the aggregate do not exceed the limitation fund. Lake Tankers Corp. v. Henn, 77 S. Ct. 1269, 1273 (1957). The second instance is when there is a single claimant who, although he seeks to recover an amount in excess of the limitation fund, files a binding stipulation that the shipowner shall have the right to limit its liability in federal court. Lewis, 121 S. Ct. at 996 (citing Langnes v. Green, 51 S. Ct. 243 (1931)). Neither of these two exceptions applies in this case, where multiple claimants each assert individual claims in excess of the limitation fund and, as well, contend that Petitioner's deposit of security for the limitation fund fails to meet the requirements of Rule F(1).

The Fifth Circuit has approved a broader application of the savings to suitors clause, however, by allowing multiple claimants to proceed in state court even when their aggregate claims exceed

the limitation fund, provided their choice is "accompanied by stipulations fully protecting [the shipowner's] right to limit liability" and they agree "to abide by an admiralty court determination of the right to limit."  Odeco Oil & Gas Co., Drilling Div. v. Bonnette ("Odeco I"), 4 F.3d 401, 405 (5th Cir. 1993).  Unlike the instant case--where separate seamen had injuries in separate accidents on different days--the multiple claims in Odeco all arose out of a single accident.

"[I]f the district court concludes that the vessel owner's right to limitation will not be adequately protected--where for example a group of claimants cannot agree on appropriate stipulations or there is uncertainty concerning the adequacy of the fund or the number of claims--the court may proceed to adjudicate the merits, deciding the issues of liability and limitation." Lewis, 121 S. Ct. at 1004.  The Fifth Circuit has stated that a court's primary concern is to ensure that the shipowner's right to limit liability is protected.  Odeco Oil & Gas Co., Drilling Div. v. Bonnette ("Odeco II"), 74 F.3d 671, 674 (5th Cir. 1996) ("Although tension exists between the Limitation Act and the saving to suitors clause, 'the [district] court's primary concern is to protect the shipowner's absolute right to claim the Act's liability cap, and to reserve the adjudication of that right in the federal forum.'" (quoting Magnolia Marine, 964 F.2d at 1575)).  While the Fifth Circuit has also stated that "[t]he case law is clear that if

5

all claimants stipulate that the federal court has exclusive jurisdiction over limitation issues and the claimants will not seek to enforce a greater damage award than the limitation fund, the claimants may proceed outside of the limitation action," Texaco, 47 F.3d at 768, ultimately, "[t]he shipowner's right to limitation takes precedence over the claimant's rights to proceed in the forum of their choice." Odeco II, 74 F.3d at 675.

### III. Analysis

Claimants move to lift the stay, stating that they "have stipulated that this court has exclusive jurisdiction over the limitation of liability proceeding and that they will not seek to enforce a greater damage award until the limitation action has been heard by this court."[3] RLB responds that the stay should not be lifted, arguing among other things that the stipulations are inadequate to protect Petitioner and--especially given Claimants' challenges to the adequacy of the limitation fund--the claims should remain in federal court for trial on liability and limitation, and also for judicial economy and to facilitate possible settlements.[4] Claimants individually have filed identical Supplemental Stipulations, which read as follows:

---

[3] Document No. 30 at 2 of 3.

[4] Document No. 48 at 5-13.

CLAIMANT'S SUPPLEMENTAL STIPULATION

Claimant [name] submits this Stipulation in connection with the above-captioned matter:

1. Claimant stipulates that Petitioner, RLB Contracting, Inc., is entitled to and has the right to litigate all issues relating to limitation of liability under the provisions of 46 U.S.C. §§30501-30512 in this Court pursuant to this Court's exclusive jurisdiction to determine all issues related to its right to limit.

2. Claimant reserves the right to deny and contest in this Court all assertions and allegations made by Petitioner in the Complaint Seeking Exoneration From or Limitation of Liability filed herein.

3. Claimant will not seek in any action any judgment or ruling on the issue of Petitioner's right to limitation of liability, and hereby consents to waive any claim of *res judicata* relevant to the issue of limitation of liability based upon any judgments that may be rendered in the State Court Action.

4. Claimant stipulates that in the event there are judgments or recoveries in each of the three Claimants' actions, or any other action, where the total amount of these judgments or recoveries by Claimants cumulatively exceeds the amount established as the proper limitation fund, whether against Petitioner or any liable party or parties who may make a cross claim or claims over and against Petitioner, in no event will Claimant seek to enforce those excess judgments or recoveries insofar as same may expose Petitioner to liability in excess of the proper limitation fund. Assuming the total amount of judgments or recoveries exceeds the amount established as the proper limitation fund, Claimant stipulates to distribution of the fund on a pro rata basis.

5. Claimant stipulates and agrees that if Petitioner is held responsible for attorneys' fees and costs which may be assessed against it by a co-liable defendant party seeking indemnification for attorneys' fees and costs, such claim shall have priority over the claim of Claimant.

6. Claimant specifically reserves the right to challenge in this Court the value of the limitation fund,

      which Petitioner has averred to be $1,600,400 for the Dredge Jonathan King Boyd, its engines, tackle, apparel, etc.

      7.    Claimants agree that the priority in which Claimants will be paid from the limitation fund is (1) Alfredo Elizondo, (2) Juan Montoya, and (3) Mario Garza.

                            Respectfully submitted,

                              THE BUZBEE LAW FIRM

                              /s/:  *Anthony G. Buzbee*
                              Anthony G. Buzbee
                              Attorney-in-charge
                              State Bar No. 24001820
                              Fed. ID No. 22679
                              J.P. Morgan Chase Tower
                              600 Travis, Suite 7300
                              Houston, Texas 77002
                              Phone: (713) 223-5393
                              Facsimile: (713) 223-5909
                              Email: TBuzbee@txattorneys.com

None of the Stipulations is signed by a Claimant, but only by the lawyer who represents all Claimants.

      A stipulation accepted by the Court must be sufficiently clear and definite for the Court to enforce it or, in this instance, to enable the Court to enter a final judgment in accordance with its terms. In this case, where the aggregate claims total $7.5 million made by three separate Claimants for injuries arising from three separate incidents, and where the limitation fund (although its adequacy is challenged by Claimants) is approximately $1.6 million, Claimants' Stipulations appear hopelessly in conflict and provide no clarity on how a final judgment should be written if the

recoverable claims exceed the limitation fund.  In paragraph 4, each Claimant stipulates "to distribution of the fund on a pro rata basis."  A pro rata distribution pays to each Claimant his proportionate share of the limitation fund based on his individual proven damages as they bear to the total amount of damages proven by all Claimants.  In paragraph 7, however, "Claimants agree that the priority in which Claimants will be paid from the limitation fund is (1) Alfredo Elizondo, (2) Juan Montoya, and (3) Mario Garza."  A prioritized distribution pays from an inadequate limitation fund the full proven damages of each Claimant in their ranked order of priority until the fund is exhausted, leaving the Claimant(s) in the lowest priority with either partial recovery of proven damages or no recovery at all.

At oral argument on the motion, the Court posed a hypothetical question to Claimants' counsel regarding this inherent inconsistency in the Stipulations.  Plaintiffs' counsel conceded that Claimants were agreeing both to a division pro rata and also to certain priorities that are inherently in conflict, and said, "I would respectfully submit, your Honor, that its--we will have to sort it out," and "We will have to sort it out, the Claimants and their lawyers."[5]  This is not a stipulation upon which the distribution of an inadequate limitation fund can be adjudged.

---

[5] Document No. 46 (Transcript of Hearing Held July 22, 2015) at 11:25-12:4.

Claimants' counsel stated that conflict waivers were obtained from Claimants although Claimants did not receive the advice of separate independent counsel before agreeing to the priorities for payments. Why should Garza, for example, who is ranked last on the priority list, agree to bear the risk of no recovery at all from an inadequate Limitation Fund? Plaintiffs' counsel explained that the way "we came up with the priority is looking at--the medical bills, the medical summary, and we put the most severe case, at least in our--in my--in my view, then the next severe case, the last severe case, the least severe case in priority and terms--."[6] Counsel's subjective assessment of his clients' claims and how they should be rank ordered in priority, said to have been agreed by the several Claimants themselves without their having received separate advice from independent counsel, raises numerous questions. But for purposes of this motion, it is sufficient to observe that Claimants' Stipulations signed by their common counsel--agreeing that, if the proper limitation fund is inadequate, the fund should be distributed *both* on a pro rata basis and on a prioritized basis in a specified rank order--presents an inherent conflict that potentially jeopardizes Petitioner's right to full protection of the Limitation Act and portends further litigation.

Second, each Claimant agrees that "in the event there are judgments or recoveries in each of the three Claimants' actions

---

[6] Id., p. 9:2-7.

. . . where the total amount of these judgments or recoveries by Claimants cumulatively exceeds the amount established as the proper limitation fund," they will not seek "to enforce those excess judgments or recoveries insofar as same may expose Petitioner to liability in excess of the proper limitation fund."  The state court cases, each filed in a different state court, would presumably proceed to trial on schedules set by each Court.  When the first state court judgment is entered, and any appeal has been exhausted, and assuming the trial judgment is for damages not "in excess of the proper limitation fund," there is no binding agreement that the judgment creditor will not seek collection or execution on that judgment.  The reference to "recoveries" suggests that no such limitation or collection is intended.  Moreover, if the first Claimant to obtain a non-appealable final judgment is first or high on the agreed priority list, that Claimant may insist he is entitled to his recovery without awaiting a limitation trial.  In order to protect the Petitioner's right to limitation, each of the Claimants needs to bind himself not to seek recovery or to attempt to execute on a final and non-appealable state court judgment awarded in favor of a Claimant until all Claimants also shall have obtained non-appealable final state court judgments.  Only then, and after the limitation trial over which this Court has exclusive jurisdiction, would the adequacy of the properly

established limitation fund be known and, if inadequate, Petitioner can be protected in accordance with the Limitation Act.[7]

Third, Petitioner argues that the motion to lift stay should be denied for reasons of judicial economy and to facilitate settlement.  Although the Supreme Court has described as the "heart of this system . . . a concursus of all claims to ensure the prompt and economical disposition of controversies in which there are often a multitude of claims," Maryland Cas. Co. v. Cushing, 74 S. Ct. 608, 611 (1954), it has also implied that efficiency is not a paramount concern.  In re Ill. Marine, 498 F.3d at 651 ("Subsequent Supreme Court cases, however, have diminished the value of the concursus's contribution to judicial efficiency and maintained that the primary purpose of the Act is limitation of liability." (citing Lewis, 121 S. Ct. at 1001; Lake Tankers Corp., 77 S. Ct. at 1273)). The overriding concern of the district court "is to protect the shipowner's absolute right to claim the Act's liability cap and to reserve the adjudication of that right in the federal forum." Odeco II, 74 F.3d at 674 (quoting Magnolia Marine, 964 F.2d at 1575).  Settlements are a matter of contract.  Nonetheless, "[P]ublic policy favors voluntary settlements which obviate the

---

[7] Because final judgments may be sold, TEX. PROP. CODE ANN. § 12.014 (West), it would also seem advisable for Claimants to bind themselves in their Stipulations to request inclusion in all state court final judgments a notice to innocent purchasers that such final judgment is not collectible and that execution cannot be made on the same until such time as the instant limitation action in this Court shall have been finally adjudicated.

need for expensive and time-consuming litigation." <u>Bass v. Phx. Seadrill/78, Ltd.</u>, 749 F.2d 1154, 1164 (5th Cir. 1985). Especially in a case such as this, where multiple Claimants have each filed separate court actions regarding injuries that they suffered on different days and under different circumstances, and all assert claims for damages far in excess of what Petitioner has declared to be the proper limitation fund, possible settlements are a practical consideration. The parties on this point appear to be agreed, having already participated in one unsuccessful mediation in an attempt to settle all of these claims.

At oral argument a question arose whether Petitioner, if it reached settlement with one of Claimants, would be entitled as a matter of law to have credit against the limitation fund for the settlement payment. Petitioner in its supplemental brief presents cogent arguments suggesting that such is not a matter of right, which poses a strong deterrent to settlement. The public policy favoring settlement of claims would therefore be thwarted by lifting the stay and, in effect, requiring that all of the state court cases be tried and finally concluded with non-appealable final judgments as a prelude to proceed with the limitation action.[8]

---

[8] Of course, it may be possible for Petitioner to settle with one Claimant on condition that all other Claimants approve and agree that Petitioner shall receive a dollar for dollar credit against the proper limitation fund or, alternatively, that the settlement not be paid until all claims have been finally adjudged

Although stipulations and agreements that adequately safeguard Petitioner's absolute right to the Limitation Act's liability cap ultimately may be reached, even in a complex and unprecedented limitation action such as this, the inadequacies in the present Stipulations require that Claimants' pending Motion to Lift Stay be denied.  Moreover, at this time the case should remain here for the conduct of pretrial discovery--regarding which the parties have already given deposition notices and have filed one or more motions regarding how pretrial discovery should proceed.  "[T]he District Court's decision [whether to dissolve the injunction] is 'one of discretion in every case.'"  Lewis, 121 S. Ct. at 1001 (quoting Langnes, 51 S. Ct. at 243.  It serves the interests of all parties for one forum to give oversight to pretrial discovery regarding Claimants' claims.  When a Claimant's cause is ready to proceed to trial and settlement efforts have been exhausted, then at that time if a renewed motion is filed to lift stay supported by a sufficiently definite, detailed, and comprehensive stipulation to cover the complexities and contingencies of this multi-claimant case, and agreed to by all co-claimants who are competing for what

---

or settled, and that the aggregate amount of all settlements and judgments--if in excess of the proper limitation fund--then be divided pro rata as provided in Rule F(8). Claimants' Supplemental Stipulations are silent on these considerations.

they allege is an inadequate limitation fund,[9] the Court will then consider whether the stay should be lifted as to one or more of such state court actions to permit a state jury trial on the liability question.

IV. Order

For the foregoing reasons, it is

ORDERED that Claimants Alfredo Elizondo, Juan Montoya, and Mario Garza's Opposed Motion to Lift Stay (Document No. 30) is DENIED without prejudice in accordance with the foregoing Memorandum.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this <u>28th</u> day of January, 2016.

*[signature]*
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

[9] The inherent conflicts of interest confronted by Claimants' counsel also will need to be resolved.

15